**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 11 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

RONALD LEE SMITH,

      Plaintiff-Appellant,

  and

ALONZO BUGGS,

      Plaintiff,

v.

ROY ROMER, GALE NORTON,
ARISTEDES ZAVARAS, DONICE
NEAL, and JOHN HADLEY,

      Defendants-Appellees.

No. 96-1211
(D.C. No. 94-K-123)
(D. Colo.)

ORDER AND JUDGMENT[*]

Before TACHA, EBEL, and BRISCOE, Circuit Judges.

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiff Ronald Lee Smith appeals from the district court's order dismissing one claim of his pro se civil rights action filed pursuant to 42 U.S.C. § 1983 and entering summary judgment on the remaining claims.[1] We review the district court's rulings de novo, Roman v. Cessna Aircraft Co., 55 F.3d 542, 543 (10th Cir. 1995) (dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim); Wolf v. Prudential Ins. Co., 50 F.3d. 793, 796 (10th Cir. 1995) (the grant or denial of summary judgment motion), and affirm.

Plaintiff is a convicted felon who has been assigned to administrative segregation at the Colorado State Penitentiary (CSP), which is the highest custody level in the most controlled environment of the Colorado Department of Corrections (DOC). He alleges that defendants, Roy Romer (the governor of Colorado); Gale Norton (the attorney general of Colorado); Aristedes Zavaras (the executive director of the DOC); Donice Neal (the superintendent of CSP); and John Hadley (the program director of CSP) have violated his civil rights by (1)

---

[1] Plaintiff Alonzo Buggs failed to sign the notice of appeal, and thus is not a proper party to the appeal. See 10th Cir. R. 3.1.

subjecting him to cruel and unusual punishment, (2) interfering with his access to courts, and (3) depriving him of due process of the law.

## I. Cruel and Unusual Punishment

The Eighth Amendment, applicable to the states through the Due Process Clause of the Fourteenth Amendment, Robinson v. California, 370 U.S. 660, 666 (1962), prohibits the infliction of cruel and unusual punishment on those convicted of crimes. A successful Eighth Amendment challenge to conditions of confinement requires a showing on an objective component, concerning the seriousness of the deprivation, and a subjective component, concerning the culpable state of mind of prison officials. See Wilson v. Seiter, 501 U.S. 294, 298 (1991).

The objective component of the test is satisfied only if the alleged deprivations deny "'the minimal civilized measure of life's necessities.'" Id. at 298 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). In examining an assertion that numerous conditions interact to form cruel and unusual punishment, a court must be aware that

> Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise--for example, a low cell temperature at night combined with a failure to issue blankets. . . . Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual

punishment when no specific deprivation of a single human need exists.

Wilson, 501 U.S. at 304-05 (citations omitted).

Inmates assigned to administrative segregation at CSP[2] are confined to their individual cells for approximately twenty-three hours a day. Plaintiff argues that this extended cell time constitutes cruel and unusual punishment in view of (1) the lack of cleaning service or, alternatively, the need for hotter water and additional cleaning supplies in the cell; (2) the eating of meals in the cell, within a few feet of the toilet; (3) the limited vocational, educational and recreational services offered through a television set in the cell; (4) the restriction of exercise to one hour a day in an individual exercise cell; (5) the presence of a night light that inmates cannot turn off; and (6) unsanitary and unventilated shower stalls.

Only the allegations relating to conditions in the shower stalls satisfy the objective prong of the Eighth Amendment test. The other complaints in plaintiff's inventory do not relate to life's necessities. Confinement to a cell for twenty-three hours a day does not necessarily amount to a constitutional violation. See Anderson v. County of Kern, 45 F.3d 1310, 1316-17 (9th Cir. 1995); see also

---

[2]    The DOC definition of administrative segregation is "the confinement of an inmate in the most secure, controlled environment available . . . for the purpose of protecting the security of the facility, staff, inmates and the public." DOC Reg. 202-2. The DOC periodically evaluates inmates to determine if they may be advanced through levels of security. DOC Reg. 600-1.

Peterkin v. Jeffes, 855 F.2d 1021, 1029 (3d Cir. 1988) (confinement for twenty-two hours a day). As to the allegations concerning cell cleanliness, it is undisputed that inmates are provided with at least a minimal amount of cleaning supplies. Requiring inmates to eat meals in cells that they must clean themselves does not present an excessive risk to inmate health or safety. Cf. Wishon v. Gammon, 978 F.2d 446, 449 (8th Cir. 1992) (observing that prison officials are not responsible for allegedly unsanitary cell conditions where prisoner is provided with supplies to do his own cleaning).

Prisoners have no constitutional right to a range of educational or vocational opportunities during incarceration. See id., 978 F.2d at 450. Similarly, they have a right to exercise, but not recreation. A CSP exercise cell meets minimum standards for exposure to fresh air and exercise. See Housley v. Dodson, 41 F.3d 597, 599 (10th Cir. 1994); see also Harris v. Fleming, 839 F.2d 1232, 1236 (7th Cir. 1988) (holding no Eighth Amendment violation where prisoner had shown that he was denied yard or recreation time, but not all exercise). Finally, difficulty in sleeping caused by a night light with the brightness of a nine-watt bulb falls far short of an extreme deprivation.

The trial court properly entered summary judgment on these aspects of plaintiff's case. Separately or in combination, they do not deprive CSP inmates of a single human need. However, the allegation that inmates have fainted in the

shower from lack of ventilation raises a legitimate concern and meets the objective component of the Eighth Amendment test.  Therefore, the claim must be evaluated under the subjective component, which requires a showing of "deliberate indifference" on the part of prison officials.  Wilson, 501 U.S. at 298.  Deliberate indifference can be found if the prison official knew of and disregarded an excessive risk to inmate health or safety.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 1979 (1994).

Plaintiff makes no relevant[3] allegations concerning the knowledge or intentions of the individuals named as defendants.  In fact, he does not allege sufficient facts to demonstrate a culpable mental state on the part of any prison official, named or unnamed.  The record shows that officials identified a shower ventilation problem when the facility first opened and attempted to correct the condition.  Plaintiff asserts that incidents of fainting have been reported, but does not provide a time frame.  The claim relating to conditions in the shower stalls was properly dismissed.[4]

---

[3]    In his brief, plaintiff argues at length that defendants' political considerations led to the conditions at CSP.  This argument is irrelevant to an Eighth Amendment analysis.

[4]    The district court dismissed the claim against all defendants, including the
(continued...)

## II.   Right of Access to the Courts

Plaintiff claims that CSP's policies and procedures infringed upon his constitutional right of access to the courts, see Bounds v. Smith, 430 U.S. 817, 821 (1977), by providing him with insufficient access to library materials and inadequate assistance from legal personnel.

There is no independent right of access to a law library or legal assistance. Lewis v. Casey, 116 S. Ct. 2174, 2179-80 (1996).  An inmate cannot make out a claim "simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense."  Id. at 2180.  The inmate must show that the denial of legal resources hindered his efforts to pursue a nonfrivolous claim.  Id. at 2179, 2182; see also Penrod v. Zavaras, 94 F.3d 1399, 1403 (10th Cir. 1996).  Further, "the injury requirement is not satisfied by just any type of frustrated legal claim."  Lewis, 116 S. Ct. at 2182.  The claim must involve a direct or collateral attack on the inmate's sentence or a challenge to the conditions of confinement.  Id.

---

[4](...continued)
superintendent of CSP, based on plaintiff's failure to allege personal participation in the asserted violation.  See Bennett v. Passic, 545 F.2d 1260, 1262-63 (10th Cir. 1976).  Because Farmer provides a more appropriate framework for conditions of confinement cases, we do not analyze the district court's reasoning on this issue.

Plaintiff failed to allege or establish that he was injured by the alleged inadequacies in CSP's legal access and assistance programs. His conclusory statement that he lost two cases "as the result of no legal assistance provided or available," Reply Brief at 6, is insufficient to withstand a summary judgment motion. He provided no information concerning the type of cases that he "lost," the procedural posture of the cases, the merits of the cases, or the nature of the assistance sought from CSP legal personnel.[5] The district court correctly determined that defendants are entitled to summary judgment on the legal access claim.

## III.  Due Process of the Law

Plaintiff's final claim, asserting deprivation of due process of the law, raises two possible theories:  substantive due process and procedural due process. To the extent that plaintiff is alleging that conditions at CSP amount to a substantive due process violation, the claim is "essentially coextensive with Eighth Amendment prohibitions against cruel and unusual punishment, and . . . the Eighth Amendment serves as the primary source of protection for convicted prisoners." Lunsford v. Bennett, 17 F.3d 1574, 1583 (7th Cir. 1994).  In the

---

[5]  We note that CSP conditions did not impede the prosecution of this case. Plaintiff filed the complaint on January 11, 1994, less than two months after his CSP reception date of November 23, 1993.  He missed no court-imposed deadlines.

absence of cruel and unusual punishment, there can be no deprivation of substantive due process rights.  Id.

Moreover, plaintiff's assignment to administrative segregation at CSP does not provide him with a procedural due process claim.  Neither the Constitution nor Colorado prison rules and regulations create a liberty interest in prisoners' classifications.  See Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (concerning the Constitution); Templeman v. Gunter, 16 F.3d 367, 369 (10th Cir. 1994) (concerning Colorado provisions).  Summary judgment is the appropriate disposition of plaintiff's due process claim.

After analyzing plaintiff's arguments and examining the entire record, we find no basis of error upon which to reverse.  The judgment of the district court is, therefore, AFFIRMED.  The mandate shall issue forthwith.

Entered for the Court

Mary Beck Briscoe
Circuit Judge