OPINION
PER CURIAM.
Robert Gattis, a prisoner proceeding pro se, filed a complaint under 42 U.S.C. § 1983 in the District Court, alleging that certain Delaware Department of Corrections policies infringe on his constitutional rights. Gattis also filed a request for a preliminary injunction and a temporary restraining order, as well as a motion for appointment of counsel. The District Court dismissed the action under the Prison Litigation Reform Act (“PLRA”), 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(l), and denied Gattis’ requests for injunctive relief and counsel, reasoning that his claims were frivolous and failed to state a cognizable claim. Gattis now appeals that decision. We have jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons that follow, we will affirm in part, vacate in part, and remand for further proceedings.
Gattis is on death row at the James T. Vaughn Correctional Center (“JTVCC”) in Delaware. In his § 1983 complaint, Gattis alleged that two policies of the JTVCC violate his constitutional rights.[1] First, he contended that the JTVCC’s policy of prohibiting prisoners from possessing sexually explicit magazines, as applied to inmates on death row, violates the First and Fourteenth Amendments. Second, Gattis argued that his Eighth Amendment rights were violated when the JTVCC altered its exercise policies for death row inmates, reducing their exercise schedule from four to three days per week and forcing them to exercise indoors if outdoor space was unavailable. In addition to preliminary in-junctive relief, Gattis sought permanent injunctive relief, nominal damages, punitive damages, and costs. The District Court dismissed the complaint under § 1915 and § 1915A, reasoning that Gattis’ damages claims were barred by Eleventh Amendment immunity, and that his remaining claims were legally frivolous.
When reviewing a complaint dismissed under § 1915, this Court applies the same standard provided for in Federal Rule of Civil Procedure 12(b)(6). See Tourcher v. McCullough, 184 F.3d 236, 240 (3d Cir.1999). In determining whether a district court properly dismissed a complaint under Rule 12(b)(6), this Court must “accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.” Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir.2002)). This standard requires that a plaintiff allege in his complaint “ ‘enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]” of a cause of action. Phillips, 515 F.3d at 234 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).
Gattis presents three arguments on appeal. First, he argues that the District Court erred in dismissing all of his monetary damages claims. The Eleventh Amendment bars a suit for money damages against a state agency and state officials sued in their official capacities. See Melo v. Hafer, 912 F.2d 628, 635 (3d Cir. *804 1990). However, the Eleventh Amendment does not bar such claims against state officials sued in their individual capacities. See id. Nor does the PLRA prohibit prisoners from seeking nominal or punitive damages in § 1983 actions. See Allah v. Alr-Hafeez, 226 F.3d 247, 251-52 (3d Cir.2000). Thus, though we agree with the District Court that Eleventh Amendment immunity bars any monetary claims against the JTVCC and its employees in their official capacities, we note that Gattis correctly argues that the Eleventh Amendment does not bar his damages claims against the defendants inasmuch as he sued them in their individual capacities.
Second, Gattis argues that the District Court erred in dismissing his First Amendment claim. In determining whether a prison regulation infringes on a prisoner’s constitutional rights, courts apply the four-part framework established in Turner v. Safley, 482 U.S. 78, 89-91, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). See Waterman v. Farmer, 183 F.3d 208, 212-213 (3d Cir.1999).[2] In concluding that Gattis’ claim was frivolous, the District Court did not expressly conduct a new analysis under Turner. Rather, it relied on two District of Delaware cases, Jolly v. Snyder, No. 00-041, 2003 WL 1697539 (D.Del. Mar.22, 2003) (applying Turner to the JTVCC policy prohibiting sexually explicit material), and Stevenson v. Snyder, No. 00-732, 2004 WL 422693 (D.Del. March 4, 2004) (relying on Jolly’s application of Turner to the same ban). Gattis argues that Jolly and Stevenson are not controlling because they do not contemplate the ban as it relates to death penalty prisoners, who are subject to special conditions, including administrative segregation. We agree that an analysis of the Turner factors, as applied to Gattis’s specific circumstances, is warranted.
The explicit materials policy involved in Jolly, Stevenson, and the present case applies broadly to all prisoners. The Jolly and Stevenson decisions rested on the argument that “the policy is necessary to maintain prison security and to further rehabilitative goals. Specifically, Defendants urge that possession of pornographic materials by prisoners, especially sex offenders, can lead to sexual harassment of female officers and can undermine the safety of both prison guards and other inmates.” Jolly, 2003 WL 1697539, at *3. Neither case explains whether the plaintiffs involved were, like Gattis, death row inmates, or whether they were housed in the general prison population. While the reasoning of Jolly and Stevenson might reasonably be applied to the JTVCC inmate population at large, it may or may not hold up when applied to death row inmates in administrative segregation: the record does not reveal the extent to which death penalty inmates have close contact with guards, female officers, and other inmates, so the degree to which the prison security issues involved in Jolly and Stevenson are also in play here is unclear. Moreover, since Gattis is on death row, further analysis is required to demonstrate that rehabilitation is a legitimate penological interest. Given the possibility of clemency or other relief that could change Gattis’s sentence, we do not say that rehabilitation concerns are irrelevant. Indeed, rehabilitation may be appropriately considered even if it pertains only to a *805 prisoner’s behavior while incarcerated, but some analysis in that regard should be undertaken by the District Court in the first instance, and such analysis may benefit from further development of the record. In short, the District Court lacked sufficient facts to conclude that Gattis is similarly situated to the plaintiffs in Jolly and Stevenson.
Moreover, the procedural posture of Jolly and Stevenson differed significantly from the instant case. Those cases were decided on a motion to dismiss and motion for summary judgment, respectively, meaning that the defendants had been afforded an opportunity to respond to the claims against them and articulate a reason for the challenged policy. Here, the District Court dismissed Gattis’ complaint during the § 1915 screening process, assuming that administratively segregated prisoners are subject to the same rationale as the plaintiffs in Jolly and Stevenson. On remand, the District Court should consider whether the defendants should be afforded an opportunity to develop the factual record and explain how, if at all, the regulation reasonably applies to inmates in Gattis’ situation.
Third, Gattis argues that the District Court improperly dismissed his Eighth Amendment claim. The denial of exercise or recreation may result in a constitutional violation. See Peterkin v. Jeffes, 855 F.2d 1021, 1081-38 (3d Cir.1988). However, a plaintiff must demonstrate that such a denial is sufficiently serious to deprive inmates of the minimal civilized measure of life’s necessities. See Tillman v. Lebanon County Com Facility, 221 F.3d 410, 418 (3d Cir.2000). Even minimal provision of time for exercise and recreation may satisfy constitutional requirements. See, e.g., Wishon v. Gammon, 978 F.2d 446, 449 (8th Cir.1992) (forty-five minutes of exercise per week not constitutionally infirm); Knight v. Armon-trout, 878 F.2d 1093, 1096 (8th Cir.1989) (holding that denial of outdoor recreation for thirteen days not cruel and unusual punishment). Moreover, “a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation.” May v. Baldwin, 109 F.3d 557, 565 (9th Cir.1997). Thus, we agree with the District Court that Gattis’ alleged harm — that his exercise was limited to three days per week and that he was not guaranteed outdoor exercise at all times — was insufficiently serious to implicate the Eighth Amendment.
Finally, Gattis appeals from the District Court’s denial of his requests for preliminary injunctive relief and appointment of counsel. A court should grant injunctive relief only if, inter alia, “the plaintiff is likely to succeed on the merits ... [and] denial will result in irreparable harm to the plaintiff.” Maldonado v. Houstoun, 157 F.3d 179, 184 (3d Cir.1998). The District Court denied injunctive relief, reasoning that Gattis failed to demonstrate a likelihood of success on the merits. We agree with the District Court’s reasoning as it pertains to his Eighth Amendment claim. Further, we cannot say that Gattis’ inability to access sexually explicit material constitutes irreparable harm. As such, the District Court’s denial of injunctive relief concerning his First Amendment claim was also appropriate.
With respect to Gattis’ request for counsel, we review the District Court’s decision for abuse of discretion. See Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir.1997). Although we perceive no abuse of discretion in the denial of Gattis’ motion, see Tabron v. Grace, 6 F.3d 147, 155-56 (3d Cir.1993) (setting forth the factors a court should consider in deciding a motion for appointment of counsel), we note that the District Court is free to reevaluate its *806 decision on remand if circumstances warrant.
Accordingly, we will affirm the judgment of the District Court in part, vacate in part, and remand for further proceedings consistent with this opinion.

. Notably, Gattis did not name the JTVCC as a defendant in the § 1983 action. Rather, he sued several Department of Corrections employees in their individual and official capacities.

. The Turner test “requires courts to consider (1) whether a rational connection exists between the regulation and a neutral, legitimate government interest; (2) whether alternative means exist for inmates to exercise the constitutional right at issue; (3) what impact the accommodation of the right would have on inmates, prison personnel, and allocation of prison resources; and (4) whether obvious, easy alternatives exist.” Watennan, 183 F.3d at 213 n. 6 (citing Turner, 482 U.S. at 89-91, 107 S.Ct. 2254).